**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12887

Non-Argument Calendar

————————————

EDDIE JAMES MOULTRIE,

*Plaintiff-Appellant,*

*versus*

G. EDWARDS,

Lieutenant,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cv-00416-JLB-KCD

————————————

Before GRANT, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Eddie James Moultrie, a prisoner in the custody of the Florida Department of Corrections, appeals the district court's

dismissal of his § 1983 suit against Lieutenant Gerald L. Edwards, a prison official.  Because the complaint fails to state a claim, we **AFFIRM**.

## I.

Moultrie wanted to clean his "filthy" cell.  He requested cleaning supplies, but received diluted cleaning chemicals, a dustpan, and a miniature broom.  Unsatisfied, Moultrie filed a grievance.  Edwards, the supervisor of Moultrie's dorm, approved the grievance and ordered staff to provide all inmates with brooms and mops.

Not long after, clogged toilets flooded the dorm.  Moultrie filed another grievance, again complaining about the lack of adequate cleaning supplies.  After "the plumber" denied the grievance, Moultrie escalated the issue up to Edwards by filing yet another grievance.  Edwards, again, approved the grievance and ordered staff to give Moultrie what he asked for.

In response to the spree of grievances, Edwards further ordered an officer to enter Moultrie's cell and clean it.  Inside, the officer found contraband: an extra bed sheet and sugar packs—not inherently dangerous, but nonetheless in violation of prison rules prohibiting the storage of extra items and food in cells.  As discipline for the extra bed sheet, Edwards confiscated Moultrie's mattress.  For the sugar packs, Edwards put Moultrie on "meal management" for two meals, shrinking the amount of food that he would receive.  Moultrie filed two grievances that day,

24-12887                Opinion of the Court                3

complaining about the missing mattress and smaller meals.  Edwards denied both grievances.

For a total of eighteen days, Moultrie slept on a metal bed frame, leading to significant back and hip pain.[1]  He also filed grievance after grievance, raising complaints at all levels of Florida's administrative appeals system.

Eventually, Moultrie filed this lawsuit *pro se*, claiming that (1) Edwards confiscated the mattress to retaliate against Moultrie's grievances regarding his dirty cell, in violation of the First Amendment; and (2) that confiscation constituted "cruel and unusual punishment" under the Eighth Amendment.

The district court dismissed Moultrie's First Amendment claim on the grounds that the complaint did not support a reasonable inference that Edwards harbored any retaliatory animus.  The court dismissed Moultrie's Eighth Amendment claim on exhaustion grounds, concluding that he did not properly appeal the denial of his mattress-related grievances.  Rather than file an amended complaint, Moultrie appealed the dismissal order.

**II.**

We review de novo a district court's dismissal of a complaint for failure to state a claim.  *Quality Auto Painting Ctr. of Roselle, Inc.*

---

[1] During this period, Moultrie (and his cellmate) received a disciplinary report claiming that their cell was "in complete disarray," with "bunks unmade." While Moultrie denies those charges, the complaint does not allege what came of any disciplinary proceedings.

*v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019). We accept the complaint's well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Id.* To survive a motion to dismiss, these allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While *pro se* pleadings are construed liberally, they must still allege sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

We "may affirm a judgment on any legal ground, regardless of the grounds addressed and relied upon by the district court." *Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1235–36 (11th Cir. 2004).

## III.

To prevail on his First Amendment retaliation claim, Moultrie must prove that: (1) his speech was constitutionally protected; (2) he suffered adverse action that would likely deter a person of ordinary firmness from engaging in protected speech; and (3) there is a causal relationship between the retaliatory action and protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

The filing of a grievance to complain about prison conditions is protected speech. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). And there is no dispute that forcing an inmate to sleep without a mattress would likely deter an ordinary

person from engaging in protected speech.  But here the dispute is over causation—whether Edwards "was subjectively motivated to take the adverse action because of the protected speech."  *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).

At the outset, we note that Moultrie filed more than a dozen grievances complaining about many different things.  The complaint alleges that Edwards retaliated against Moultrie for filing a particular set of grievances—those "complaining about the unsanitary conditions of confinement" and the lack of "adequate cleaning supplies."  The district court concluded that the complaint did not plausibly allege that Edwards confiscated (and then failed to return) Moultrie's mattress to retaliate against him for filing those grievances.  We agree for two reasons.

*First*, Edwards approved all of Moultrie's grievances regarding the uncleanliness of the cell—including one that his colleague previously denied.  There is no basis to infer that Edwards sought to retaliate against grievances *he already approved*.  The allegation that Edwards harbored a retaliatory motive is not only conclusory, but "wildly implausible."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).

*Second*, Moultrie admitted in his grievance forms that he possessed contraband.  In response to many of those grievances, other prison officials confirmed that Edwards confiscated Moultrie's mattress as discipline for violating prison rules.  Moultrie does not allege that these other officials schemed with Edwards to retaliate against Moultrie for his earlier grievances.  There is no indication

that Edwards's legitimate disciplinary justification was pretext for retaliation.

In sum, the complaint does not allege sufficient facts to support a reasonable inference that Edwards punished Moultrie for his protected speech.

**IV.**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition guarantees that prisoners will not be deprived "of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A two-step analysis governs an Eighth Amendment claim challenging a prisoner's conditions of confinement. *First*, under the "objective" component, the prisoner must "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). *Second*, under the "subjective" component, the prisoner must show that the prison official possessed a "sufficiently culpable state of mind"—that the official was deliberately indifferent to the prisoner's health or safety. *Id.* (quotation omitted).

To satisfy the first, "objective" component, the prisoner must clear a "high bar": he must demonstrate that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Chandler v. Crosby*, 379 F.3d 1278, 1289, 1298 (11th Cir. 2004) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

A "prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Id.* at 1295. After all, "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation omitted). That is especially true when the discomfort comes as discipline for violating prison rules.

We start and end at this first step. Sleeping without a mattress for eighteen days, though uncomfortable, does not amount to "wanton and unnecessary" pain. *Chandler*, 379 F.3d at 1289 (quotation omitted). The harm from this sort of discipline is not so grave or extreme as to violate contemporary standards of decency. Because the challenged prison condition is not, "objectively, sufficiently serious," the complaint fails to state an Eighth Amendment claim. *Farmer*, 511 U.S. at 834 (quotation omitted). For these reasons, we need not consider whether the district court's conclusion that Moultrie did not exhaust administrative remedies was correct.

⋆          ⋆          ⋆

Moultrie filed many grievances about the uncleanliness of his cell, and Edwards approved each and every one he reviewed. Moultrie faced discipline for his contraband, not his grievances. And that discipline did not violate the Eighth Amendment. We **AFFIRM**. All pending motions are denied as moot.